MEYERSON v. UNITED STATES GRAND LODGE, INDEPENDENT ORDER SONS OF BENJAMIN.

(Supreme Court, Appellate Term, First Department.  March 4, 1915.)

1. INSURANCE (§ 817*)—MUTUAL BENEFIT INSURANCE—AMOUNT OF RECOVERY —BURDEN OF PROOF.

Where a benefit certificate provided for reduction of the amount of the certificate when one-half of one assessment would not produce that amount, the burden is on the company to prove what the amount, if less, would be.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1999–2002; Dec. Dig. § 817.*]

2. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—AMOUNT OF RECOVERY —SUFFICIENCY OF EVIDENCE.

In an action on a benefit certificate for $500, providing that no more could be recovered than one-half of one full assessment would bring, defendant's evidence held insufficient to show what the amount would be, and hence not to overthrow a verdict for the full amount of the certificate.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

Pendleton, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Annie Meyerson against the United States Grand Lodge, Independent Order Sons of Benjamin. From a judgment on a verdict directed for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued February term, 1915, before GUY, PENDLETON, and SHEARN, JJ.

M. Angelo Elias, of New York City, for appellant.

Henry Kuntz, of New York City (Abraham P. Wilkes, of New York City, of counsel), for respondent.

SHEARN, J.   Concededly the burden of going forward with the proof to establish the amount of one-half of one full assessment on each member of defendant order at the time of the death of the member, which occurred February 28, 1912, was upon the defendant.   No such evidence was introduced.   Defendant merely handed the Grand Secretary of the order certain unidentified papers, which appear to have assessments in 1909 and 1910, and was asked what the assess-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment per member in class B as of the 1st of February, 1912, was, and answered:

"The assessment realized $368.75 per death."

Then followed this hypothetical question and answer:

"Q. So that, if Meyerson was a member of the order, and the order had assessed its membership for the payment of that death, it would have realized for the payment of one death claim how much? A. $368.75."

This fell short of establishing that an assessment was levied, or, if not levied, what it would have realized as of February 28, 1912.

Moreover, even assuming that the assessment would have realized only $368.75, plaintiff would have been entitled to that sum, and not one-half thereof. The assessment to be levied in such case was not a full assessment, but was "one-half of one full assessment." When the witness was attempting to testify as to what an assessment duly levied would have realized, he must be deemed to have referred to the assessment that was *authorized* to be levied in such case, which was "one-half of one full assessment." This was plainly the view of defendant's counsel on the trial, who, in asking a direction of a verdict, said:

"I further ask that in no event has there been proven more than $368.75, and therefore no verdict can be predicated for an amount in excess of that."

But it was incumbent on the defendant to prove what an assessment duly levied at the time of the member's death would have amounted to, and, having failed so to do, the verdict should not be disturbed.

After the deceased had maintained his membership for a period of 20 years, and had paid his assessments on the assumption that his widow would receive $1,000 at his death, the constitution and by-laws of the defendant were amended, and his membership was changed so that the death benefit was reduced to $500. After paying dues for 22 years, some five weeks prior to his death an attempt was made to forfeit all his rights for alleged failure to pay his dues for December, 1911, and January, 1912, amounting to the sum of about $8. Such circumstances do not warrant excusing the defendant from complying strictly with the burden of proof in its attempt to whittle this claim down to $184.37.

In my opinion the judgment should be affirmed, with costs.

Judgment affirmed, with costs.

GUY, J., concurs.

PENDLETON, J. (dissenting). The action is to recover a death benefit upon the death of plaintiff's husband. Defendant contends that at the time of his death decedent was not a member in good standing of the defendant order, having been suspended for nonpayment of dues, and that in any event the amount of the verdict was too great. The constitution (article 9, section 5) provided that where a member has been stricken from the roll of membership for nonpayment of dues, taxes, or assessments no death benefit should be paid,

and under the fair construction of all the papers going to make up the contract sued on the plaintiff was entitled to recover, unless it appeared decedent had been regularly suspended.

Decedent died February 28, 1912. He had not paid the dues for December, 1911, and January and February, 1912, and the lodge assumed to suspend him January 23, 1912. There was a constitution of 1906 and an amendment in 1910. The constitution of 1906 provided (article 9, section 1) that in case of two months' default in payment the secretary should send the member notice by mail, at least six days before the last meeting of the following or third month, requesting payment, and if not paid at such meeting, after announcement of the name of the delinquent in open lodge, the delinquent's name should be stricken from the roll. Section 2 provided that failure to send or receive such notice should not excuse nonpayment, but each member making default in *such payment* should stand as if stricken from the roll. Obviously, the "such payment" refers to the payment referred to in section 1, and under these provisions decedent could only be stricken from the roll at the last meeting in February and after announcement as aforesaid. These provisions were never complied with.

By the amendment of 1910, which for the purposes of this appeal must be assumed to have been legally adopted and to be binding on decedent, it was provided that all subordinate lodges—

"shall call all assessments upon the 1st day of each month, giving all members 15 days to pay assessments, and if not so paid, the member shall stand suspended without further notice."

Defendant contends that under these provisions no notice to decedent was necessary, and that, failing to pay by the 15th of the month, he stood suspended. It appeared, however, in evidence (folios 145, 166–167) that the amount of the monthly payments varied, and construed in the light of that fact, and the usual rule governing the construction of instruments of this character, the above provisions fairly import some action by the lodge to call the assessment and the giving of some notice to members that they may know the amount before the 15 days commence to run. No competent evidence was given to show any action by the lodge calling the assessments for December, 1911, and January and February, 1912, or notice to the decedent, and so far as that matter is concerned the direction of a verdict was proper.

Other defenses were alleged, and some evidence given as to the failure by plaintiff to submit proper proof of death, or to appeal to some court of appeals, contemplated by defendant's organization; but the evidence was not sufficient to call for the submission to the jury of any question arising thereunder.

Appellant contends there was error in allowing the complaint to be amended at the trial, on the ground that the amendment brought in a new cause of action. This, however, is not the fact. The amendment, in effect, only altered the amount of the claim.

The objection to the amount of the verdict presents a more serious question. The certificate of membership provides for the payment of $500:

"Provided, however, that if the death of such member shall occur when one-half of one full assessment on each member of this order would not amount to the said sum of $500, that then the amount to be paid under this certificate and the constitution and laws of said order shall not exceed the amount of such one-half of one full assessment."

The constitution (article 1, section 2) contains substantially similar provisions. Defendant at the trial called as a witness the Grand Secretary of the order, who testified without objection as follows:

"Q. Now, pursuant to that certificate, an assessment is levied on all members for deaths that occur? A. Yes, sir.

"Q. Now, tell me, on or about the 1st of March, 1912, how much did the assessment on all the members in the order realize for a death claim? A. I put it down for you on a piece of paper, which paper I gave to you; I cannot recall it without that paper.

"Q. Look at this memorandum: Is that a transcript of your books—of the books kept by the defendant order? A. Yes, sir.

"Q. How many members were there in the order in February, 1912? A. 1,430.

"Q. What was the assessment on the members in class B per member? A. At that age it was— I haven't got the right paper here.

"Q. Look at these assessments, and I ask you as to the 1st of February, 1912? A. This is 1909 and 1910.

"Q. Look at those papers (handing witness papers). A. The assessment realized $368.75.

"Q. Per death? A. Per death.

"Q. So that, if Meyerson was a member of the order, and the order had assessed its membership for the payment of that death, it would have realized for the payment of one death claim how much? A. $368.75.

"Q. Did you issue a certificate of membership to the deceased, Jacob Meyerson? A. I did.

"Q. Look at this book. I ask you to look at it, and see the number of the certificate. A. It is 12,777.

"Q. And this is the certificate which was issued by you (handing witness a paper)? A. Yes, sir.

"Q. And that certificate calls for the payment of $500? A. Yes, sir.

"Q. Or as much as one assessment realizes? A. Yes, sir.

"Q. Or, in other words, as much as one assessment realized on all the members of the order at that time? A. Yes, sir.

"Q. Look at Plaintiff's Exhibit A, and I ask you whether or not that was the certificate that was referred to in the letter of Cohen & Cohen, on which they demanded, on behalf of Mrs. Meyerson, the payment of a death claim by you? A. The number is correct; yes.

"Q. So that the demand that was made upon the order was for the payment of $500, in accordance with Exhibit F, or as much as half of one assessment would realize; is that right? A. Yes, sir.

"Q. Now, according to the roster of membership of the defendant order, was Jacob Meyerson a member on the roll of membership on the 28th of February, 1912?

"Plaintiff's Counsel: I object to that, as calling for the conclusion of the witness.

"(Objection overruled; exception taken.)

"A. He was not, no, sir, on February 28th.

"Q. And no assessment for the death of Jacob Meyerson was levied on the membership order? A. No, sir."

Respondent criticizes this evidence as insufficient. While it might have been clearer, it was entirely uncontradicted. It may be a question as to whether or not defendant was entitled to have the amount stated accepted as a proven fact in the case; but the evidence was sufficient to

require, at least, that the question should be submitted to the jury, as to whether at the time of decedent's death one-half of one full assessment on each member would amount to $500, and, if not, what would have been its amount; and if the question was properly raised at the trial, the direction of a verdict for plaintiff, and the failure to send the case to the jury on that question, was error.

At the end of the trial there was considerable discussion as to procedure. Finally, at folio 197, defendant's counsel specifically called attention to the fact that he claimed that the verdict could not be for the full amount, and after the direction of a verdict moved, on the same ground, to set it aside (folio 198), which was subsequently denied. Although the usual technical procedure was somewhat departed from, and defendant's counsel should more properly have specifically asked to go to the jury on the specific question, still substantial justice will be best secured by directing a new trial, unless plaintiff consents to reduce the judgment to what it would be if the verdict had been for $368.75 and interest.

If plaintiff so consents, the judgment, so reduced, should be affirmed, without costs of this court; otherwise, judgment should be reversed, and new trial ordered, with costs to appellant to abide the event.